729 A.2d 326 (1999)
In re S.M., Appellant.
No. 98-FS-1156.
District of Columbia Court of Appeals.
Argued March 30, 1999.
Decided April 22, 1999.
*327 Deborah L. Harris, Public Defender Service, with whom James Klein and Samia Fam, Public Defender Service, were on the brief, for appellant.
Sidney R. Bixler, Assistant Corporation Counsel, with whom John M. Ferren, Corporation Counsel, Robert R. Rigsby, Deputy Corporation Counsel, and Rosalyn Calbert Groce, Director, Policy and Appeals Branch, were on the brief, for appellee.
Before STEADMAN, SCHWELB, and FARRELL, Associate Judges.
FARRELL, Associate Judge:
Appellant is a male youth whom the government charged by juvenile petition with murder in the first degree. Because he was fifteen years old at the time of the offense, the government moved to transfer him to the Criminal Division of the Superior Court for prosecution as an adult. See D.C.Code § 16-2307(a)(1) (1997). Following an evidentiary hearing which focused chiefly on whether appellant could be rehabilitated through residential juvenile treatment, Judge Campbell issued a lengthy and thoughtful opinion and order granting the motion to transfer. He found that the government had carried its burden of proof in making the twofold showing required by § 16-2307, namely, (1) that transfer "is in the interest of the public welfare and protection of the public security and [(2)] there are no reasonable prospects for rehabilitation." Section 16-2307(d).[1]
In this interlocutory appeal, appellant does not take issue with the trial judge's finding that he had failed to rebut the presumption of dangerousness arising *328 from his commission of the murder,[2] see note 1, supra (quoting subsection (e-2)). Rather, he attacks only the judge's application of the second statutory criterion, "no reasonable prospects for rehabilitation." Appellant asserts that, although purporting to place the burden of proving no such prospects on the government in accordance with Super, Ct. Juv. R. 109(c),[3] the judge actually shifted the burden of proof to appellant by defining "no reasonable prospects" to mean a showing that it was not "more likely than not" that appellant would be rehabilitated if retained in the juvenile system. Consistent with that definition, the judge posed the question as whether or not "residential treatment (or anything else available in the juvenile system) probably will succeed [in appellant's case], not whether it offers merely the best chance of success" (emphasis in original). Appellant argues that by thus equating "reasonable prospects" with probability (more likely than not) rather than possibility, the judge allowed the government to meet its burden of proof by merely showing that the evidence was evenly balanced (in equipoise) as to the prospects of rehabilitation, an outcome that ordinarily requires a finding against the party with the burden of proof (citing 21 CHARLES A. WRIGHT & KENNETH W. GRAHAM, JR., FEDERAL PRACTICE AND PROCEDURE § 5122 (1977)).
In analyzing this argument, it is important to keep separate two concepts: (1) the burden and quantum of proof (here the government's burden of proof by a preponderance of the evidence) and (2) the thing to be provedwhether or not there were reasonable prospects for appellant's rehabilitation. The two become easily confused when, as here, the trial judge has defined the matter to be proved in terms often used to define the evidentiary standard (preponderance of the evidence), viz., "more likely than not." But we do not agree with appellant that the judge shifted the burden of proof by requiring the government to disprove the probability, rather than the possibility, that rehabilitation would succeed. And we are convinced that that definition of "no reasonable prospects" is correct viewing the statute as a whole.
In In re J.L.M., 673 A.2d 174 (D.C. 1996), this court explained the history and structure of the transfer statute.[4] We held that, before transfer may be ordered, the government must prove both that the public welfare and security dictates transfer and that there are no reasonable prospects of rehabilitation of the juvenile. Id. at 181-82. We thus rejected the government's argument that transfer should follow as a matter of course once the government has shown (with or without the aid of the subsection (e-2) presumption) that the public safety favors transfer. At the same time, however, we recognized that at least as to juveniles charged with committing specified dangerous crimes, the legislature meant to ease the way to transfer by allowing the government, in meeting its burden of proof on the first criterion, to rely on the juvenile's failure to rebut the presumption of danger to society. Id. *329 Moreover, we held that that failure to rebut is an additional factor the trial court may consider in deciding whether the government has proved the second criterion of no reasonable prospects for rehabilitation. Id. at 182.
In this statutory context, the trial judge correctly concluded that the legislature did not intend "reasonable prospects" to mean only the possibility of rehabilitation rather than its probability. It did not mean, in other words, to countenance the following result: The government, perhaps on the basis alone of the juvenile's failure to rebut the presumption of dangerousness, has proven that the public welfare dictates transfer; yet transfer fails because it has not also disproven every rational (non-fanciful) possibility of rehabilitation.[5] That reading, first of all, would be inconsistent with the legislature's insertion of public security in the statute as a mandatory factor to be considered. See note 4, supra. Further, as to the enumerated dangerous crimes, it would run counter to the rebuttable presumption that persons charged with them "should be transferred for criminal prosecution." Section 16-2307(e-2) (emphasis added). And it would be inconsistent as well with the close relatedness of the two transfer criteria revealed by the fact that "the court is to apply subsection (e) factors when addressing both of the criteria that ... govern the transfer decision," In re J.L.M., 673 A.2d at 178 n. 4. Accepting appellant's position that "reasonable prospects" requires only a possibility (at most an even chance) of rehabilitation would contrive a greater distinction between the two inquiries than the statute intends, with corresponding devaluation of the public safety criterion. As Judge Schwelb explained in his separate opinion in In re J.L.M., the practical "task of the judge at the transfer hearing is to make an informed prediction as to whether, if treated as a juvenile, the respondent, at the end of the road, (1) will probably no longer be dangerous, and (2) will probably have been rehabilitated," inquiries that are in large part "indistinguishable." Id. at 184 (Schwelb, J., concurring).[6]
Appellant's position is not without force given that the statute requires the government to prove "no reasonable prospects for rehabilitation" (emphasis added). Nevertheless, for the reasons stated, we hold that the trial judge correctly determined that the issue in disputeand on which the government had the burden of proofwas whether juvenile treatment promised only the chance (even "the best chance") of rehabilitation of appellant, or instead offered the likelihood of success. If rehabilitation in the juvenile system was not more likely than not to succeed, then transfer could not be avoided consistently with the public welfare.
Once we recognize that the judge correctly defined "no reasonable prospects for rehabilitation," none of the language in his opinion which appellant cites as effectively shifting the burden of proof supports that conclusion. Moreover, the judge carefully analyzed the evidence according to that legal standard before finding that "[t]he preponderance of the evidence in the case leads me to conclude that there are no reasonable prospects for the respondent's rehabilitation in the juvenile system." In In re J.L.M., supra, we held that "the decision whether to transfer a juvenile for prosecution as an adult must be committed to the trial court's sound discretion." 673 A.2d at 182. There was no abuse of discretion *330 here, and accordingly the decision transferring appellant for prosecution must be
Affirmed.
NOTES
[1] D.C.Code § 16-2307 provides in relevant part:

(d) ... The [Family] Division shall order the transfer [for criminal prosecution] if it determines that it is in the interest of the public welfare and protection of the public security and there are no reasonable prospects for rehabilitation.
* * *
(e) Evidence of the following [then-enumerated] factors shall be considered in determining whether there are reasonable prospects for rehabilitating a child prior to his majority and whether it is in the interest of the public welfare to transfer for criminal prosecution....
* * *
(e-2) There is a rebuttable presumption that a child 15 through 18 years of age who has been charged with any of the following offenses, should be transferred for criminal prosecution in the interest of public welfare and the protection of the public security:
(1) Murder ....
[2] "For purposes of the transfer hearing the Division shall assume that the child committed the delinquent act alleged." D.C.Code § 16-2307(e-1).
[3] Rule 109(c) states: "[T]he Corporation Counsel shall have the burden of showing by a preponderance of the evidence that it is in the interest of the public welfare and protection of the public security that the respondent be transferred for criminal prosecution and that there are no reasonable prospects for rehabilitating the respondent within the jurisdiction of the Family Division prior to the respondent's majority."
[4] We first observed that historically the statute had "focused the trial court's attention exclusively on the prospects for rehabilitating the juvenile before his or her majority," but that in 1993, the legislature "added a second, public welfare/security criterion to all transfer determinations." 673 A.2d at 178. Further, by creating the rebuttable presumption of subsection (e-2), the amended statute "appeared to reduce if not eliminate any evidentiary burden on the District created by the new public welfare/security criterion." Id. at 179.
[5] A "reasonable prospect," appellant asserts in his reply brief, is "a prospect that is rational as opposed to specious or fanciful."
[6] That focus on probabilities accords with the substantive meaning of similar predictive judgments in other contexts. See, e.g., Millard v. Harris, 132 U.S.App. D.C. 146, 155, 406 F.2d 964, 973 (1968) ("Predictions of dangerousness, whether under the Sexual Psychopath Act or in some other context, require determinations of several sorts: ... the likelihood or probability that [the person] will in fact indulge in that conduct ....").